UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00145-HBB

MICHAEL WILCOXSON     PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION[1]     DEFENDANT

### MEMORANDUM OPINION AND ORDER

BACKGROUND

Before the Court is the complaint (DN 1) of Michael Wilcoxson ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 16) and Defendant (DN 20) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12). By Order entered January

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

9, 2020 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

## FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance Benefits on March 9, 2016 (Tr. 15, 190-94).[2] Plaintiff alleged that he became disabled on September 27, 2008 as a result of a back injury that causes severe back and leg pain as well as numbness to the legs and feet, arthritis, and high blood pressure (Tr. 15, 190, 210). On April 3, 2018, Administrative Law Judge Jonathan Stanley ("ALJ") conducted a video hearing from Lexington, Kentucky (Tr. 15). Plaintiff and his attorney, M. Gail Wilson, participated from Campbellsville, Kentucky (Id.). William J. Braunig, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated July 24, 2018, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-26). The ALJ began by noting that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2014 (Tr. 17). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity from his alleged onset date of September 27, 2008 through his date last insured of June 30, 2014 (Id.). At the second step, the ALJ determined that Plaintiff has the following "severe" impairments: degenerative disc disease of the thoracic spine with pain; degenerative disc disease of the lumbar spine with lumbalgia/lumbago/radiculopathy; bilateral carpal tunnel syndrome; depressive disorder not otherwise specified/dysthymic disorder; and generalized anxiety disorder (Tr. 18). The ALJ also determined that Plaintiff's history of right

---

2 Although the ALJ's decision indicates Plaintiff file the application on March 8, 2016 (Tr. 15), application actually indicates Plaintiff filed it on March 9, 2016 (Tr. 190).

thumb tendonitis, peripheral arterial vascular disease of the lower extremities, hypertension, rule out alcoholism, GERD, a remote history of right tibia/fibula fracture by report, and status post tonsillectomy are "non-severe" impairments within the meaning of the regulations (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found that during the relevant time frame Plaintiff had the residual functional capacity (RFC) to perform a range of sedentary work because he could occasionally push and pull using the lower extremities; could occasionally climb stairs and ramps, but could not climb ropes, ladders, and scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to temperature extremes, wetness, and vibration; could not work at unprotected heights or around hazards, such as heavy equipment; could understand, remember, and carry out short, simple instructions and make simple work-related judgments; could maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision; could manage and tolerate simple changes in the workplace routine; and could adapt to the pressures of simple routine work (Tr. 20). Relying on testimony from the vocational expert, the ALJ found through the date last insured, Plaintiff could not perform any of his past relevant work (Tr. 25).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 25-26). The ALJ found through the date last insured Plaintiff could have made a successful adjustment to other work that existed significant numbers in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social

Security Act, from September 27, 2008, the alleged onset date, through June 30, 2014, the date last insured (Tr. 26).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 186-89). The Appeals Council denied Plaintiff's request for review (Tr. 1-5).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. §

405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

      4)      Does the claimant have the residual functional capacity to return to his or her past relevant work?

      5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

## Finding No. 5

1. Arguments of the Parties

Plaintiff presents three arguments challenging the ALJ's RFC determination in Finding No. 5 (DN 16 PageID # 663-65). First, Plaintiff argues the ALJ erred in not affording appropriate weight to the opinions of his treating physician, Dr. Rice (Id. PageID # 663-64). Dr. Rice was in the best position to render opinions concerning his ability to perform work as he provided treatment on or before Plaintiff's insured status expired on June 30, 2014 (Id.). Further, Dr. Rice's opinions are strongly supported by the April 2013 findings[3] of Social Security examining physician, Dr. Lopez-Suescum (Id.). Plaintiff also contends the ALJ should have considered the MRI[4] and EEG[5] records when he assessed Dr. Rice's opinion because the findings relate back in time to his condition on or before his insured status expired (Id.). Specifically, these tests provide relevant information about his back condition, hand tremors, and carpal tunnel syndrome (Id.).

---

3 Specifically, Dr. Lopez-Suescum noted Plaintiff had reduced lumbar range of motion with both flexion and extension, squatted poorly, hopped poorly and was unable to jump above ground (DN 16 PageID # 663-64).

4 According to Plaintiff, the "MRI revealed interval resolution of a left parade trail disc extrusion at L5-S1, a diffuse disc bulge at L5-S1 with bilateral facet hypertrophy and high grade bilateral neuroforaminal narrowing, diffuse disc bulge at L4-L5 with a mild midline disc protrusion, an annular tear, and moderate bilateral neuroforaminal compromise" (Id. PageID # 664).

5 Plaintiff asserts the EEG studies revealed he had bilateral carpal tunnel syndrome (Id. citing Tr. 592).

Next, Plaintiff argues the ALJ erred in determining he could engage in substantial gainful activity at the sedentary level (Id. PageID # 664-65). Plaintiff believes the ALJ failed to properly evaluate the effects of his back pain and his use of pain medications in assessing his RFC (Id.). Plaintiff contends his "severe back problems when combined with his mental issues, hand tremors, and carpal tunnel syndrome would greatly restrict his ability to engage in substantial work" (Id. PageID # 664).

Finally, Plaintiff argues the ALJ erred in failing to consider the combined effects of his multiple impairments (Id. PageID # 665 citing 20 C.F.R. § 404.1523). Plaintiff reasons the RFC determination cannot be supported by substantial evidence because the ALJ failed to consider the combined effect of Plaintiff's impairments (Id.).

Defendant argues the ALJ's evaluation of Dr. Rice's opinion is supported by substantial evidence and comports with applicable law (DN 20 PageID # 677-80). Defendant points out the Act and the regulations require Plaintiff to prove disability prior to June 30, 2014, his date last insured (Id.). Therefore, the relevant time period for Plaintiff's claim is from September 27, 2008 (the alleged onset date) through June 30, 2014 (the date last insured) (Id.). Defendant contends the ALJ reasonably found that Dr. Rice's January 2018 opinion, generated outside the relevant period, had little probative value regarding Plaintiff's limitations during the relevant period (Id. citing Tr. 24). Further, the ALJ noted the evidence did not support the level of limitation because there was no evidence of advance degenerative changes in the spine and Dr. Lopez-Suescum's records during the relevant period showed the Plaintiff retained significant abilities to ambulate and move (Id. citing Tr. 24, 409-12). Defendant points out the records Plaintiff cited in support of his carpal tunnel syndrome postdate the date last insured by several years and does not indicate

Plaintiff was disabled due to carpal tunnel (Id. citing Tr. 591-97).  By contrast, the ALJ noted that in April 2013 Dr. Lopez-Suescum found Plaintiff had well-preserved gross and fine manipulation skills and full grip strength, normal full fist clenching, and normal adduction and abduction of his fingers of both hands (Id. citing Tr. 21, 411).  Thus, the evidence from the relevant time frame indicates Plaintiff did not experience any fine or gross manipulation limitations and supports the ALJ's RFC for sedentary work (Id.).

Next, Defendant argues the ALJ properly determined Plaintiff had the RFC to perform a limited range of sedentary work (Id. PageID # 680-83).  The RFC is supported by substantial evidence in the record which includes objective medical evidence, the medical opinion evidence, and Plaintiff's reported activities (Id.).  The ALJ pointed out that during the relevant time frame there was no evidence of advanced degenerative changes in his spine or other indications that would cause greater limitations (Id. and Tr. 23).  The findings from Dr. Lopez-Suescum showed Plaintiff retained significant abilities to ambulate and move and had no manipulative limitations (Id. and Tr. 24, 410-12).  The ALJ found the opinions of Dr. Lopez-Suescum and nonexamining state agency physician, Dr. Irlandez, persuasive as to Plaintiff's physical limitations (Id. citing Tr. 24, 411-12, and 23, 81-95).  The ALJ found the opinion of Ollie C. Dennis, Ed. D., and Brandon C. Dennis, Psy. D., persuasive as to Plaintiff's mental limitations (Id. citing Tr. 23-24, 415-20).  Further, the ALJ is not required to accept at face value Plaintiff's subjective claims (Id.).

Finally, Defendant argues the ALJ considered Plaintiff's impairments individually and in combination throughout the sequential evaluation process (Id. PageID # 683- citing Tr. 15-26).  Defendant points out a number of examples in the decision where the ALJ indicated he considered Plaintiff's impairments individually and in combination (Id. citing Tr. 18, 20-25).

2. Discussion

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

Although Plaintiff filed his application before March 27, 2017, the ALJ applied the new regulations for evaluating medical opinions (Tr. 15, 23-24). *See* 20 C.F.R. § 404.1520c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[6] in the record, even if it comes from a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). [7] Instead, administrative law judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a)

---

6 At the initial and reconsideration levels state agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. §§ 404.1513a(a)(1),416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

7 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

and (b), 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[8] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). Further, the regulation requires administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Notably, under the regulation administrative law judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). An administrative law judge will articulate how he considered the other factors in paragraphs (c)(3) through (c)(5) of the regulation when the administrative law judge finds that two or more medical opinions about the same issue are both equally well supported and consistent with the record but are not exactly the same. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ's assessment of the evidence in connection with the RFC determination is thorough and accurate (Tr. 20-25). He provided a comprehensive summary of Dr. Rice's treatment records addressing Plaintiff's physical and mental condition during the relevant time frame (Tr. 21, 22 citing Tr. 421-536). The ALJ noted that Dr. Rice's medical records concerning Plaintiff's physical impairments during the relevant time frame are significant because they showed Plaintiff exhibited weakness and multiple other limitations related to back pain that were

---

8 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

treated conservatively and on an intermittent basis (Tr. 21). The ALJ also observed that Dr. Rice's treating notes did not indicate Plaintiff was unable to ambulate or required assistance with ambulation (Tr. 21). The ALJ indicated the RFC accounted for these limitations by restricting the claimant to performing no more than a reduced range of sedentary exertional work activity (Id.).

The ALJ provided a thorough summary of the April 2013 findings of the consultative examiner, Dr. Lopez-Suescum, concerning Plaintiff's lumbalgia of unknown etiology (Tr. 21, 409-14). The ALJ observed that the findings are significant as they show Plaintiff exhibited limitations in range of motion and exhibited some limitations in the ability to perform postural movements (Id.). But the findings also indicate Plaintiff exhibited normal strength and the ability to ambulate normally (Id.). The ALJ further noted that Dr. Lopez-Suescum did not find any neurological limitations suggesting advanced degeneration, such as nerve root compression (Id.). The ALJ indicated that Dr. Lopez-Suescum's findings supported the conclusion that despite this back condition, Plaintiff retained the ability to perform a reduced range of sedentary exertional work activity (Id.).

The ALJ next provided a thorough summary of Dr. Lopez-Suescum findings concerning Plaintiff's wrists, hands and fingers (Tr. 21-22, 409-14). Specifically, that Dr. Lopez-Suescum noted well preserved gross and fine manipulation skills and 5/5 grip strength (Id.). The ALJ concluded the findings indicate Plaintiff was not disabled due to carpal tunnel syndrome because, during the relevant time frame, he did not experience limitations in performing fine or gross manipulation (Id.). The ALJ found the evidence supports the determination that Plaintiff retained the ability to perform a reduced range of sedentary exertional work (Id.).

11

In assessing Plaintiff's limitations due to degenerative disc disease and carpal tunnel syndrome, the ALJ acknowledged that Plaintiff had provided many medical records that addressed his condition after the date last insured (Tr. 22 citing Tr. 421-536, 592-597). The ALJ explained that he considered these records and concluded the evidence did not indicate Plaintiff was more limited than described by the RFC prior to the date last insured (Id.). The ALJ pointed out that a June 2015 MRI of Plaintiff's lumbar spine showed interval resolution of a left paracentral disc extrusion at L5-S1; a diffuse disc bulge at L5-S1 with bilateral facet hypertrophy and high grade bilateral neuroforaminal narrowing; a diffuse disc bulge at L4-L5 with a mild midline disc protrusion, an annular tear, and moderate bilateral neuroforaminal compromise (Tr. 22 citing Tr. 505, 535). The ALJ noted that while the MRI showed degenerative changes, the phrase "interval resolution" indicates some improvement in Plaintiff's condition (Id.). Additionally, the scan did not show advanced degeneration, such as severe spinal stenosis or nerve root compression (Id.). The ALJ indicated these facts support the conclusion that Plaintiff retained the ability to perform sedentary exertional work activity prior to the date last insured (Id.). The ALJ explained that similarly, the March 2018 electrophysiological studies revealed evidence of bilateral carpal tunnel syndrome (Tr. 22 citing Tr. 592-594). The ALJ indicated because this evidence addressed Plaintiff's condition several years after the date last insured it was of little probative value for the period prior to the date last insured (Id.).

Regarding Plaintiff's mental health impairments, the ALJ noted that on multiple occasions Dr. Rice reported Plaintiff's mood and affect were anxious and he prescribed medications such as Celexa (Tr. 22, 421-536). But the ALJ observed that the record did not show Plaintiff had advanced mental health symptoms that required treatment like ongoing therapy or counseling,

psychiatric hospitalization, or crisis stabilization (Id.). Further, the ALJ noted the absence of advanced mental health symptoms like suicidal ideations, recurrent panic attacks, delusions, hallucinations, or violent behaviors (Id.). The ALJ indicated the treatment history supported the conclusion that Plaintiff's mental health impairments caused no more than mild to moderate limitations (Id.).

The ALJ also provided a thorough summary of the report and opinions rendered by Dr. Dennis, the consultative psychological examiner (Tr. 22-23, 415-20). The ALJ found the observations in Dr. Dennis' report also supported the conclusion that Plaintiff's mental health impairment does not impose more than mild to moderate limitations because they show he retained the ability to perform multiple tasks and engage in some social interactions (Id.).

The ALJ indicated that he found the opinions of the nonexaminging state agency medical consultant, Dr. Irlandez, to be persuasive (Tr. 23). The ALJ pointed out that Dr. Irlandez's opinions are generally consistent with performing only a range of sedentary exertional work (Id.). The ALJ observed that Plaintiff's treatment records supported the conclusion that he retained the ability to perform a range of sedentary exertional work activity as they indicated that Plaintiff experienced ongoing pain and some weakness, but they also did not indicate that he was unable to ambulate or stand up from a seated position (Id.). Further, the records did not show evidence of significant spinal stenosis, nerve root compression, or other advanced degenerative changes that might be expected to cause greater limitations (Id.). Additionally, the ALJ noted that the medical evidence showed no physician opined that Plaintiff was a surgical candidate (Id.). The ALJ explained that overall, these facts support Dr. Irlandez's opinions and the conclusion that the claimant retained the ability to perform a range of sedentary exertional work activity (Id.). The

ALJ's findings regarding the persuasiveness of Dr. Irlandez's opinion are supported by substantial evidence in the record. Additionally, his findings comport with applicable law because the ALJ explained how he considered the supportability and consistency factors in determining the persuasiveness of Dr. Irlandez's opinions.

The ALJ explained he found Dr. Lopez-Suescum's opinions persuasive (Tr. 23). Specifically, Dr. Lopez-Suescum opined that Plaintiff is able to drive short distances, had no obvious skeletal limitations and did not require a cane (Id.). The ALJ explained that the doctor's opinions were generally consistent with the RFC (Id.). Additionally, the ALJ found the opinion about driving supported by and consistent with Plaintiff's own testimony that he is able to drive, although he drives only rarely (Id.). The ALJ found the opinion that a cane is not medically required is supported by Dr. Lopez-Suescum's observations at the consultative examination, particularly that Plaintiff exhibited a normal gait and was able to walk in and out of the examination room as well as perform tandem gait, tiptoe walking, and heel walking (Id.). The ALJ's findings regarding the persuasiveness of Dr. Lopez-Suescum's opinions are supported by substantial evidence in the record and comport with applicable law.

The ALJ found the opinions of Dr. Dennis to be persuasive (Tr. 23-24). Dr. Dennis opined that Plaintiff can understand and remember one and two stage instructions with mild difficulty and he experienced mild limitations in his capacity to sustain attention and complete tasks (Id.). The ALJ explained these limitations were supported by evidence showing Plaintiff is capable of completing tasks, such as yard work (Id.). Dr. Dennis also opined that Plaintiff experienced mild to moderate limitations in social interactions (Id.). The ALJ explained the evidence supported the conclusion that Plaintiff retained the ability to interact with others in multiple contexts because he

reported to Dr. Dennis that he had a girlfriend, interacted with family, and got along reasonably well with others (Id.). Dr. Dennis also opined that Plaintiff's overall capacity to adapt to the pressures of normal daily work activity was mildly limited (Id.). The ALJ explained that this opinion was supported by the fact that Plaintiff's treatment records do not show any advanced mental health symptoms and he has not required advanced mental health treatment, such as psychiatric hospitalization or crisis stabilization (Id.). The ALJ's findings regarding the persuasiveness of Dr. Dennis' opinions are supported by substantial evidence in the record and comport with applicable law.

The nonexamining state agency psychological consultant, Nick Watters, Psy.D., opined that Plaintiff did not experience any severe mental health limitations (Tr. 88-89). The ALJ found the opinion not supported by the evidence because Dr. Rice's treatment notes showed Plaintiff consistently exhibited an anxious affect (Tr. 24). The ALJ's conclusion that the opinion was not persuasive is supported by substantial evidence in the record and comports with applicable law.

The ALJ noted that Dr. Rice expressed opinions in January 2018 that would limit Plaintiff to a more substantial degree than indicated by the RFC (Tr. 24). The ALJ pointed out the opinions were expressed over two years after the date last insured and had little probative value regarding that time period (Id.). Further, the medical evidence did not support the level of limitation because there was no evidence of advanced degenerative changes in the spine and Dr. Lopez-Suescum's notes showed Plaintiff retained significant abilities to ambulate and move (Id.). The ALJ's finding that Dr. Rice's opinions were not persuasive is supported by substantial evidence in the record and comport with applicable law.

For the above reasons, there is no merit to Plaintiff's argument that the ALJ erred in not affording appropriate weight to the opinions of Dr. Rice. Further, the ALJ's decision indicates he did consider the June 2015 MRI and March 2018 EEG records but found they had little probative value regarding Plaintiff's physical condition during the time period at issue, September 27, 2008 through June 30, 2014. Substantial evidence in the record supports the ALJ's findings concerning the MRI and EEG. Further, a thorough review of the ALJ's decision reveals that he did consider the combined effects of Plaintiff's physical and mental impairments in making the RFC determination.

Next, Plaintiff's subjective statements regarding pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. § 404.1529(a). In determining whether Plaintiff suffers from debilitating pain and other symptoms, the ALJ appropriately applied the two-part test for making that assessment. *See* Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). First the ALJ examined the record and found objective medical evidence of a number of underlying medical conditions. The Administrative Law Judge then determined that the objectively established medical conditions were not of such severity that they could reasonably be expected to produce the pain and other symptoms to the degree alleged by Plaintiff (Tr. 20-21). Id. Therefore, the ALJ appropriately considered other information and factors that may be relevant to the degree of pain and other symptoms alleged (Tr. 18-25). 20 C.F.R. § 404.1529(c)(3).

The ALJ considered Plaintiff's level of daily activity in determining the extent to which the purported pain and other symptoms are of disabling severity (Tr. 18-25). 20 C.F.R. § 404.1529(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990). The ALJ also considered inconsistencies in the evidence and the extent to which there were any conflicts between Plaintiff's statements and the rest of the evidence (Tr. 18-25). 20 C.F.R. § 404.1529(c)(4).

Plaintiff makes a general assertion that the ALJ failed to properly evaluate his "use of pain medications for the pain" (DN 16 PageID # 665). The regulations indicate medication used to alleviate the alleged pain or other symptoms is a factor Administrative Law Judges will consider. 20 C.F.R. § 404.1529(c)(3)(iv). The ALJ failed to comply with this rule as his analysis does not mention Plaintiff's pain medication. However, considering the other factors the ALJ discussed and Plaintiff's failure to explain the significance of the pain medications he utilized, it appears the omission is harmless.

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain to the extent he testified. In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to assess Plaintiff's subjective allegations. The undersigned concludes that the ALJ's findings regarding Plaintiff's subjective allegations are supported by substantial evidence. Furthermore, for the reasons set forth above, the ALJ's RFC determination in Finding No. 5 is supported by substantial evidence in the record.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

June 10, 2020

*[signature]*

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:    Counsel